## UNITED STATES DISTRICT COURT
## DISTRICT OF WILMINGTON, DELAWARE

Brenda Parker

**Plaintiff**

1400  Clifton St. NW APT 422

Washington, DC 20009

Case No. **21 - 1678**

**REFILING COMPLAINT FROM
SOUTHERN DISTRICT COURT OF
INDIANAPOLIS, IN: 1:17-cv-04404-JMS-MJD**

v.

**DEMAND FOR JURY TRIAL**

Amazon.com.INDC, LLC
AGENT MANAGER JOHN FELTON
AGENT MANAGER MICHAEL ROTH
AGENT MANAGER STEPHANIE BURNS
PRESIDENT/SECRETARY/MANAGER MICHAEL DEAL_
        **Defendants**

### TITLE VII  ACTION-FRAUD ON COURT- DAMAGES

1.      Comes, (Plaintiff), Brenda Parker, proceeding pro se in bringing this action against

Amazon.com.INDC, LLC to now be referred as Amazon in this filing. Plaintiff comes to void

the Southern Indianapolis District Court action for fraud on the court.

2.      Plaintiff's Title VII civil action can be filed pursuant to Title VII three prong mandate in

DE and Plaintiff chose the above venue for legal and adequate relief against all Defendants.

3.      Plaintiff completed the administrative process with the filing of charges under Title VII

with the Indiana EEOC office. Plaintiff received Right to Sue Letter and Plaintiff timely filed

Title VII action within 90 days of the Right to Sue Letter. (See Section A Exhibits).

**PARTIES**:

4.      Plaintiff is still experiencing retaliatory treatment by the illegal enterprise consisting of

all Defendants and numerous co-conspirators, because of the Title VII action filed November

28,2017.  Co-conspirators will be defendants in another federal action, which will also be filed

within this court- God Willing.

1

5.      While Plaintiff resided at a women's shelter in D.C. from December 2019 through August 2020. Because of the continuing plots by all above Defendants and other co-conspirators, Plaintiff has continued to struggle economically, financial, while Jesus has consistently shielded Plaintiff from numerous continuously plots, by conspirators, to harm Plaintiff physically, mentally, emotionally, financially and economically.

6.      Plaintiff is an individual who resides in Washington, District of Columbia since before COVID-19 hit the world in February 2020.  Parker was scheduled to move into a new apartment at 1400 Clifton St. NW, Apt. 422, Washington, DC 20009 in September 2021 but the same illegal enterprise has illegally blocked Plaintiff from receiving move-in date, which has resulted in Plaintiff again struggling through residential trials and tribulations in attempts to file this action. Plaintiff has been given permission to receive mail at the new apartment as Plaintiff await clearance for an actual approved move-in date. Plaintiff is unable to provide Plaintiff's present residential site address.

7.      Defendant Amazon. is an LLC doing business at 4255 Anson Blvd., Whitestown, IN from 2008 through the original filing of Plaintiff's Title VII action in the Southern District Court in Indianapolis, IN on November 28, 2017. Amazon was and still is, incorporated in DE.

8.      At the time the November 28, 2017 action was filed and to this filing, Amazon could be served with summons and complaint at 251 Little Falls Drive, Wilmington, DE 19808.

As of the multiple fraud SOS filings and Agent revocations Plaintiff was electronically blocked and telephone calls redirected, as Plaintiff recently attempted to verify Amazon's SOS filings in numerous states. Defendant Amazon's agent was revoked numerous times in Indiana. (See Section A Exhibits).

9.      Plaintiff attempted numerous times to receive updated corporation filing in Delaware and Indiana and received a message that there is a fee for retrieving corporation information in November 2020 through November 2021. Plaintiff was also electronically blocked via internet and attempted telephone calls illegally disconnected or redirected to a false call center, numerous times from February 2021 through November 2021. Plaintiff will attempt contact again before actual filing of this action by the week of November 21, 2021.

10.      Defendant Manager Stephanie Burns, at the time of the original filing in Indianapolis on November 28, 2017 and Plaintiff Parker's subsequent retrieval of SOS filings, as presented as exhibits, attached to the above complaint, listed her address at 410 Terry Ave. N Seattle, Washington 98109. Defendant Burns can be served with summons and complaint at this listed address. This Court has personal jurisdiction over this Defendant.

11.      Defendant Manager John Felton, at the time of the original filing of the above action in Indianapolis on November 28, 2017 and Plaintiff's subsequent retrieval of SOS filings, as presented as exhibit attached to the above complaint, address of 410 Terry Ave. N Seattle, Washington 98109 is where Defendant Felton can be served with summons and complaint. This court has personal jurisdiction over this Defendant.

12.      Defendant Manager Michael Roth, at the time of the original filing of the above action in Indianapolis on November 28, 2017 and Plaintiff's subsequent retrieval of SOS filings, as presented as exhibits attached to the above complaint, listed 410 Terry Ave. N Seattle, Washington 98109. Defendant Roth can be served with summons and complaint at this listed address. This court has personal jurisdiction over this Defendant

3

13.     Defendant President/Secretary/Manager Michael Deal, at the time of the original filing of

the above action in Indianapolis November 28, 2017 and Plaintiff's subsequent retrieval of SOS

filing, as presented as exhibits attached to the above complaint, listed 410 Terry Ave. N Seattle,

Washington, 98109. Defendant Deal can be served with summons and complaint at this listed

address. This Court has personal jurisdiction over this Defendant.

14.     If not for the fraud upon the court, committed by all Defendants above, along with

numerous officers of the courts in several states, service of summons and complaint on all

indispensable parties, including the listed LLC, would have been executed legally, prior to the

void judgements entered in subject actions relating to original filing of Title VII action by

Plaintiff.

15.     Plaintiff, through all the trials and tribulations was led to refile the same action for redress

of the same Title VII action in the Washington, DC District Court, Action #1:20-cv-00597, on

the bases that the Title VII action could be filed in any district court on the bases of fraud on the

courts. Plaintiff assume this action was dismissed because the court was without personal

jurisdiction or Title VII subject jurisdiction. Plaintiff does not have access to Pacer at this time.

**JURISDICTION:**

16.     The action was dismissed by the D.C. district court because Plaintiff failed to serve above

Defendants, failed to name all above Defendants, failed to follow DC district court local rules

and Plaintiff was illegally blocked from accessing Title VII statutes via the internet to obtain

accurate knowledge on the statutes for jurisdiction for Title VII action. Plaintiff also faced

numerous barriers because of shut downs in DC from COVID-19 and interference by Defendants

4

and numerous others into any plan or attempts Plaintiff tried to receive justice in any court of law.

17.     Fraud judgment entered in the Southern District Court of Indianapolis is void for fraud on the court by all Defendants above, who had prior knowledge that their actions were illegal and subject to being brought into Wilmington, Delaware District Court, in forum, because of the fraud and conspiracy to defraud. Fraud on the court hidden from Plaintiff.

18.     Plaintiff brings this action under Title 28 U.S.C Section 1391(c) and 1391 (b) and Section 1404. Defendant Amazon employs more than 15 employees.

19.     The District Court of Wilmington, Delaware has subject matter jurisdiction of Title VII action against Amazon under constitutional law of Title VII violations' prongs and to void judgments entered in Indianapolis, IN by fraud on the court. All Defendants are subject to the jurisdiction of the above district court because the LLC is under Delaware jurisdiction.

20.     All Defendants illegal acts and actions in above, is prerequisite for all Defendants to be hauled into federal court to attempt to defend illegal acts and actions to commit fraud in forum.

21.     District Courts have the authority to assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. Defendants' forum related illegal activities are joined in the premise of why this action is being refiled, to prayerfully, be presented to a jury on the merits - God Willing.

22.     Personal jurisdiction of all Defendants, falls under the Fifth Amendment for specific jurisdiction for unlawful acts perpetrated, to receive favorable void decisions in federal court.

5

23.     Citizenship of corporation is measured at the time Plaintiff Parker filed original action in the Southern District Court of Indianapolis, Indiana on November 28, 2017 and a corporation is a citizen of place incorporated at the time of original action filed November 28 2017.

**VENUE**:

24.     Venue is proper in Wilmington, Delaware because Amazon is incorporated Amazon in Delaware, at the time Plaintiff originally had the option to file her complaint on November 28, 2017. Under 42 U.S.C. 2000e-5(f)(3) and (5); [A]n action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

25.     The principle office of Amazon was located in Wilmington, Delaware at the time original action was filed November 28, 2017.

26.     Brenda Parker now files this action, with use of the second prong of where Title VII action may be filed.  The District Court of the District of Wilmington, Delaware is State by which Amazon was legally registered as an LLC to operate in Delaware.

27.     The three mandates issued by Congress on where an Employer Discrimination Title VII Action may be filed under Title VII, 28 U.S.C. §§ 1331, 1337, 1343, and 1345, and 42 U.S.C. §2000(e)-5(f). Wilmington, Delaware is proper venue and jurisdiction of this matter pursuant to Congress special venue and mandated jurisdiction of Title VII actions against Employer

Discrimination, which provides a Plaintiff with a wide latitude to select an appropriate venue provision. 42 U.S.C. __ 2000e-5(f); 28 U.S.C. §§ 1331, 1337, 1343, and 1345.

28.     The three (3) prong test established by Congress is clear. Amazon was incorporated in Delaware before December 4, 2018 and subsequent filing on the same day. The fraud was done after the civil conspiracy to commit fraud on the court was launched by defendants and numerous officers of the court after action filed November 28, 2017.

29.     The discriminatory activities deliberately launched against Plaintiff under age, race, religion, was orchestrated at the fulfillment center at 4255 Anson Blvd, Whitestown, IN by managers and other associates recruited by Jeff Bezo and others from 2015 through and including the date of termination in September, 2017. Plaintiff pursuant to congress directives, filed her Title VII action in the state where the discrimination occurred, which was Indiana, where Plaintiff resided and worked.

30.     Plaintiff has attached as Exhibit A a copy of the original complaint filed in the Southern District Court of Indianapolis, Indiana with Exhibits, filed November 28, 2017. Plaintiff has been financially blocked from gainful employment and therefore could not afford time and expense of ordering and praying that certified copy from Southern District Court of Indianapolis, IN would safely arrive.

31.     Plaintiff mail has also been tampered with by the illegal enterprise from 2017 through the filing of this action.

32.     All Defendants listed above acted with malice and fraud upon the SOS of several states, while illegally operating Amazon from March 7, 2008 through the last SOS filings within

7

Delaware and Indiana that Plaintiff was able to retrieve via the internet before being electronically blocked from access.

33.     Plaintiff was not able to retrieve any other SOS filings, as Plaintiff was illegally blocked from accessing any other filings. with the Secretary of State (SOS) of North Dakota, SOS of Delaware and SOS of Indiana after the above exhibits were obtained.

34.     Numerous secretary of state illegal filings by Amazon and Amazon's subsequent agent revoked filing from Indiana, on hold filing from North Dakota and illegal dissolved Amazon from Delaware and Indiana by stating Amazon is no longer operating when it is still operating in Whitestown, IN in 2021.

35.     All secretary of state filing done simultaneously, while district court judge deliberately with malice and fraud upon the court, delayed litigation in the Southern District Court of Indianapolis as stated above, until such time that all listed Defendants had completed all the illegal SOS filings in three states- maybe more illegal filings in other states.

36.     All the illegally acts done to avoid prosecution of illegal acts and actions in federal and state court, brought by Plaintiff and possibly other unknowing plaintiffs and future plaintiffs.

Plaintiff state and alleges the following:

37.     Defendants Amazon is stated to be a foreign limited liability corporation, but at the time of original filing of subject action in 2017, Amazon was not legally registered at Indiana Secretary of State as a foreign corporation to be legally authorized to operate in Indiana.

38.     Amazon has been illegally operating for years, dating back to 2008, at Amazon Fulfillment Center at 4255 Anson Blvd., Whitestown, IN. (See Exhibits within Section B).

39.     It was the district court judge and two magistrate judges of the Southern District Court of Indianapolis, who deliberately with malice with reckless indifferent conduct, orchestrated a scheme with Jeff Bezo and Amazon to thwart all efforts of Plaintiff to legally serve summons and complaint and prosecute all claims against Amazon under a Title VII action.

40.     Illegal acts and actions orchestration to deliberately delay justice began at the filings of Plaintiff's charges with Indiana EEOC. (See Exhibits under Section A).

Indiana EEOC failed Plaintiff by failure to act by investigating Amazon on charges.

41.     Indiana EEOC failed to investigate charges filed by Plaintiff and failed to provide Plaintiff with documentation of any actions taken by EEOC against Amazon.com. EEOC merely provided Plaintiff Parker with Letter of Right to Sue, (Exhibit under Section A).

42.     Amazon.com has continued operations in Whitestown, IN at the time of this filing. Amazon is subject to the jurisdiction of Wilmington, Delaware under Title VII as the jurisdiction that the civil action could have been filed.

43.     The presiding district court judge and two magistrate judges of Southern District Court of Indianapolis, Indiana, aided and abetted Jeff Bezo and Amazon in the perpetrated fraud by the numerous secretary of state filings in Delaware, Indiana and South Dakota.

44.     The district court judge in Southern District Court of Indianapolis, illegally dismissed Plaintiff's Title VII action, before Amazon was legally served with summons and complaint.

Plaintiff filed a motion to appoint the Marshall to serve summons and complaint on the correct corporation, Amazon on February 15, 2018 on docket entry 15 filed February 15, 2018,

PageID 148-15. The Indianapolis district court judge denied this motion in her order filed on the docket thereafter.

45.     Amazon did not file any proof of waiver of service of summons and complaint within the record. The entry made March 19, 2018 (Doc #20) was made by fraud on the court to deceive Plaintiff. Amazon's name was changed on the record but no legal service of summons and complaint or waiver of service is part of the record.

46.     At the time the district judge made entry on the docket relating to waiver of service as stated above, Amazon was not legally authorized to conduct business at Amazon Fulfillment Center in Whitestown, Indiana (See Exhibits-Section B).

47.     None of the Defendants listed within original filed action in Indianapolis was not legally represented by counsels of record because none of counsels of record filed required appearances, prior to filing any pleadings with federal court in Indianapolis, Indiana.

48.     Amazon did not file required corporation disclosure statement at the onset of the November 28, 2017 action filed and failed to subsequently file later either on their own directive or by order of the court.

49.     Numerous attorneys committed fraud on the court by their illegal representation of appearances filed in Indiana federal court when they were not licensed to represent any defendants in the Southern District Court of Indianapolis, Indiana.

50.     There were false documents of attorney appearances filed in the above action (twice) and then back dated by co-conspirators of Amazon to make it appear as though each counsel followed federal law mandates and filed appearances before filing any pleadings.

51.    The district court judge failed to consider and rule on jurisdiction of all parties before filing numerous consolidated orders and final judgement which is void by fraud on the court. The court did not have personal jurisdiction of Amazon.

52.    The Indianapolis district court did not have personal jurisdiction over other listed Defendants in original action because they were employees and not managers of the LLC and employees of LLC cannot be sued in a Title VII action.

53.    If it were not for the fraud upon the court by officers of the Southern District Court of Indianapolis and others, Plaintiff's action would have been transferred to Wilmington, Delaware since Amazon was only authorized to conduct business in Delaware and not Indiana from 2008 through November 28, 2017 and thereafter.

54.    All Defendants, whiling knowing and understanding the magnitude of their SOS illegal filings by hop-scotching from one SOS to another in numerous states to attempt to escape prosecution.

55.    Plaintiff has not been gainfully employed since being blacklist by Jeff Bezo and his Amazonzes, with the recruitment of numerous individuals to target Plaintiff in her life, her liberties and pursuit of happiness from August 2017 through this filing in 2021.

56.    Amazon was not a foreign corporation legally operating in Indiana in 2017 and not legally registered to operate at 4255 Anson Blvd., Whitestown, Indiana because of illegal secretary of state filings.

## INTRODUCTION and STATEMENT OF FACTS TO DISCRIMINATION:

57.    Because of the fraud on the Court of Indianapolis, with the assistance of officers of the court, Plaintiff was denied Due Process of Law and a lawful decision on the merits of the initial

filing of the civil action, in the Southern District Court of Indianapolis, Indiana under case 1:17-cv-04404-JMS-MJD.

58.     The civil conspiracy and continued retaliation by Defendant Amazon has continued with illegal surveillance of Plaintiff from Indianapolis, Indiana, to Valparaiso, Indiana, to other areas and then Washington, DC, as Plaintiff attempted to find gainful employment, while being blacklist by Defendant Amazon and others.

59.     Plaintiff was employed at Indy location in Whitestown, Indiana from July 2013 through Integrity Staffing and then through Amazon full-time from February 1, 2014 through and including September 11, 2017.

60.     Plaintiff was denied Due Process of Law in the above action and denied Title VII mandates to be allowed discovery and evidentiary proceedings up to the trial.

61.     Plaintiff Parker was denied discovery, in which to receive documented and factual evidence of the legal operations of Amazon by a fraud perpetrated by all Defendants, with the assistance of numerous officers of the courts and others.

62.     Plaintiff filed an emergency written complaint to EEOC on September 12, 2017, (Exhibit –Section A) regarding accelerated retaliation by Amazon and its officers, managers and associates.

63.     Plaintiff brings this action under willful violations of: Race and Religion Discrimination, Title VIII -Age Discrimination, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq.,42 U.S.C. Privacy Protection Act, 42 U.S.C. Section 2000a, et seq., Violations under Voyeurism and deprivation of privacy, for installing a camera in the women's

restroom, on the ceiling fixture, to cause emotional distress to Plaintiff, which caused Plaintiff to believe she was unsafe at Amazon in Whitestown, Indiana.

64.     Plaintiff was forced to join the ranks of the unemployed because working at Amazon under the eyes of sexual predators, while spying on females in the women's restroom. Plaintiff notice the camera in the restroom in September 2017 while praying for strength. Plaintiff looked up and noticed the camera and quickly reported its existence in the restroom to Amazon Human Resource, Ms. Mandy, who did nothing in September 2017.

65.     The Indiana State law claim of voyeurism is so related to the Title VII claims that all claims are intertwined and are of the same employment discrimination and harassment claims stated and this Court could assume supplemental jurisdiction over state law claims against Amazon by its discretion.

66.     Amazon perpetrated a scheme through employer illegal practices, electronic data manipulation and harassment to illegally fire numerous African American Women, over the age of 40 to easily transition into utilizing Artificial Intelligence (AI) to replace human workings and hire more of Amazon's preferred race of people, which is of Asian descent.

67.     Amazon, with managers, officers and other associates, treated other groups, outside of Plaintiffs stated protected class, more favorably from 2015 through and including September 2017.

68.     Amazon. utilized computer algorithm manipulation of data to create false and fraudulent reports of statistical data of time on tasks of packing and shipping merchandise to give the appearance that targeted African American women over the age of 40 were not making daily and

weekly rate of productions. See Exhibit under Section B, which is a falsely manipulated report to fraudulent reveal Plaintiff not making rate in 2017.

69.     Plaintiff was one of the top 10 packers in large, who packed accurately and expeditiously every day of the week that Plaintiff was scheduled to work.

Upon Plaintiff's untimely departure from working at Amazon in September 2017. Plaintiff filed for and received unemployment benefits for six months. See Exhibit under Section B. PLAINTIFF intended to work for Amazon - anywhere, until employed as a Paralegal. BP

70.     All Defendants, Jeff Bezo and officers fought the decision to grant unemployment benefits just about every month by fraud with Indiana Unemployment Benefits Administrative process.

71.     Plaintiff had to appear at the unemployment administrative office each time Amazon attempted to illegally appeal the approval of unemployment benefits to Plaintiff from 2017 through about early 2018. All Defendants request were denied at Indiana Administrative Unemployment Benefits Agency.

72.     Plaintiff's lease on apartment ended in January 2018 and Plaintiff was trying to find secure shelter to reside for months because Plaintiff's life's was drastically altered by Amazon and its conspirators on purpose for an illegal purpose to deprive Plaintiff of every element of life, security and liberties. Plaintiff gladly accepted Jesus' humbling and sifting methods to bring Plaintiff into a close relationship with Himself.

73.     At all times that Plaintiff was employed at Amazon, Indy 1, Plaintiff was a packer in the Large Department. Plaintiff also worked during Indy 1 peak seasons of 2013, 2014, 2015 and

2016, Plaintiff was a packer in the Small's Department for short periods and in the Multi-packing department for short periods of time during peak time.

74.     In 2015, Amazon initiated a daily rate mandate for which each employee was required to maintain a daily rate of 85 and daily pack 850 units per 10-hour shift. (see Exhibits under Section B).

75.     It was because of Plaintiff's achievements in packing fast and accurately packing in 2015, without any kick-outs for errors of packages, that Amazon initiated the daily rate and units packed requirement to be maintained by all associates.

76.     Amazon realized in 2015 that most associates were not working their entire shift but were on numerous occasions were socializing, and violating time off tasks mandates with other associates.

77.     Amazon did not acknowledge, by verbal or written format, to Plaintiff, as a thank you or job well done for bringing to their attention the abuse of time off tasks of many employees, who were instrumental in the expedited amendment to policies and procedures to maintain daily and weekly rates to maintain employment with Amazon.

78.     Amazon did not have a mandated daily or weekly rate requirement, prior to 2015.

79.     Plaintiff was packing at an hourly rate of over 100 from 2015-2017.

80.     Plaintiff was packing at a daily rate of over 100 from 2015-2017.

81.     In 2015, Amazon asked Plaintiff if she would like to cross train in Small Packing and Plaintiff stated yes.

15

82.     The requirement for Small Packing was higher than the rate for Large Packing because in Small Packing the merchandise was smaller than the merchandise packed in Large Packing.

83.     Plaintiff was one of the top packers in Small and Large Packing at Amazon from 2015 through 2017 when Plaintiff was discharged.

84.     While Plaintiff was working in Small Packing that Plaintiff realized that her hourly and daily rate were being electronically manipulated to reflect a slower packing rate of units than what Plaintiff was actually packing in 2016 and 2017.

85.     All items of merchandise being purchased by customers, were packed from yellow colored totes in Small and Large Packing Departments at Amazon

86.     Plaintiff began documenting the number of items packed from each tote, every day of Plaintiff's 40-hour shift from around 2015 through the day of separation from employment from Amazon on September 11, 2017.

87.     Plaintiff received positive feedbacks constantly from all Defendants under Amazon from early 2014 through the beginning of the scheme to alter electronic data of Plaintiff Parker's daily and weekly rates from packing in 2015 through 2017.

88.     Amazon, in May 2017, began a plot with numerous attempts to enforce written write-ups to Plaintiff by false calculations and misrepresenting of statistical reports, generated by fraud and manipulation of computer electronic data.

89.     Plaintiff did not receive the number of documented coaching as reported by Amazon on their ADAPT statistical reports, until the plot to fire Plaintiff by use of computer manipulated data escalated in May 2017.

90.     In February 2017, Plaintiff was subjected to constant harassment at the hands of numerous employees of Amazon, who carried out the harassment by statements made to Plaintiff relating to her age and to her religious beliefs.

91.     It was the last manager of Amazon, Nguyen, who came over Plaintiff's work station in around April 2017, who stated that Plaintiff was packing slow, maybe because Plaintiff was feeling her age and was slowing down.

92.     Amazons manager stated on numerous occasions to Plaintiff, while Plaintiff was at a workstation; that maybe if Plaintiff would not track her units per day, per week on paper to document units packed and shipped that maybe Plaintiff could make rate. This was stated often in around April and May 2017.

93.     Amazon's manager then instructed Plaintiff around April 2017 to stop documenting her units packed per day on paper because this was why Plaintiff was slow in packing.

94.     Plaintiff continued to document her units packed every day on paper, up until Plaintiff was forced to leave employment on September 11, 2017.

95.     Plaintiff was then targeted by Amazon's officers and managers as they gave numerous verbal warnings of not making rate to Plaintiff to continue to harass Plaintiff, while Plaintiff worked around April through September 2017.

96.     Plaintiff never received any written write-ups until September 2017, when the plot to remove Plaintiff from employment intensified at Amazon by manager and other associates.

97.    Amazon's manager, on May 31, 2017 approached Plaintiff at her workstation in Single
Large and informed Plaintiff that Plaintiff is receiving a documented written coach because
Plaintiff did not make rate the previous week of May 31, 2017.

98.    Amazon's manager was instructed to give Plaintiff her very first written write-up on
September 4, 2017 after Plaintiff has worked from January 2014 up to September 4, 2017
without any verbal or written write-ups.

99.    Plaintiff only received verbal coaching at the time Plaintiff was working for and through
Integrity Staffing at Amazon up to blue badge promotion by Amazon in February 2014.

100.    An associate can only receive blue badge promotion to full-time Amazon associate if no
write-ups or frequent absences or other violations of employment occurred.

101.    Amazon's manager, attempted to give Plaintiff three consecutive written write-ups in I
believe mid 2017 but the manager realized he had not completed a review of the previous weeks
with Plaintiff, prior to having a meeting at HR for writing up Plaintiff in 2017.

102.    It is not the normal practice or protocol of Amazon stated practice to force an associate to
appear at HR for receiving a written write-up by supervising manager of a department within
Amazon.

103.    Amazon deliberately attempted to intimidate and harass, through discrimination against
Plaintiff by requiring Plaintiff to appear at HR when he had not requested the appearance at HR
by any other Amazon employee, for another employee to receive a written write-up or written
warning.

104.   Amazon's manager requested that Plaintiff follow him to HR Department for the purpose of giving Plaintiff a written write-up on September 4, 2017, Plaintiff did follow the manager to HR.

105.   Plaintiff had a meeting with HR Manager and other HR staff, who took the side of Amazon's directive and it was then that Plaintiff informed HR that Plaintiff would be filing a complaint with EEOC.

106.   Plaintiff Parker received tuition reimbursement from 2015-2018 under Career Choice Program of Amazon because Plaintiff Parker was a top packer and Plaintiff never received any write-ups to cause enrollment in the Career Choice to b discontinued.

107.   Plaintiff received tuition reimbursement under the Career Choice Program of Amazon, even after Plaintiff Parker joined the ranks of the unemployed in September 2017.

108.   The last tuition reimbursement from Amazon through its disbursement company, was made in 2018 to IUPUI on behalf of Plaintiff.

109.   As factual documented proof that Plaintiff never received a write-up, Plaintiff has always received School Accommodations for Plaintiff's enrollment at IUPUI CIT Certificate Program, through Amazon, which Plaintiff completed and received her Certificate late because of all Defendants and others recruited to throw interference with Plaintiff's attempts to continue education.

110.   Plaintiff actively participated in Amazon's Career Choice Program which reimburses 90% of Plaintiff's tuition and fees, until Plaintiff was informed by HR that no more tuition reimbursements will follow the 2018 last payment of little over $900.00 because Plaintiff was no longer employed with Amazon, per email received from Amazon HR in 2018.

111.    Amazon did not have in place any contingency for the Career Choice Program to stop reimbursements to Plaintiff or other associates, who became unemployed for no fault of Plaintiff.

112.    Amazon has a directive in place that if you receive any active write-ups, Plaintiff or any other employee or associate, will not qualify for Career Choice Program or School Accommodations. Plaintiff qualified every year from about 2015 until 2018, when the last Career Choice Disbursement was made to IUPUI. The amounts were up to $3000 per six credits completed each semester.

113.    Plaintiff visited HR back in July 2016 to retrieve information on if there was deadline for Plaintiff to turn in a copy of her CIT Certificate earned at IUPUI. The HR employee sent an email several upper management staff of Amazon and none replied.

114.    Amazon was required to continue the Career Choice Reimbursements until Plaintiff completed the Paralegal Certificate Program.

115.    Plaintiff began at IUPUI and Plaintiff was forced to withdraw after Spring 2018 because Plaintiff was unemployed and could not fight Amazon at the time for Career Choice Voucher continuance.

116.    Amazon had no in place protocol for stopping Career Choice Reimbursements if the courses were not yet completed or if associate becomes unemployed by no fault of the associate.

117.    Plaintiff was illegally deprived of reimbursements to complete paralegal certificate through Amazon's Career Choice Program by Amazon and all other Defendants.

118.    Amazon discontinued its Career Choice Program because Plaintiff shed light on the fact that reimbursements were to continue until Plaintiff completed the certificate in one year, which

would have been done in Fall 2018 if not for the targeting of Plaintiff to fail at everything on every level, perpetrated against Plaintiff by all Defendants and co-conspirators.

119.    At this point, Plaintiff was feeling unsafe at Amazon.com, Indy 1 and believed her mental, Spiritual and physical well-being was being jeopardized if Plaintiff stayed at Amazon.

Plaintiff attempted to apply and receive a Leave of Absence, on September 11, 2017, to get out of Amazon, Indy 1. Plaintiff's request was denied because Plaintiff had an active written write up on September 4, 2017 by. Nguyen, Manager.

120.    It was the illegal actions of manager of Amazon, who stated he was instructed to approach Plaintiff, to make Plaintiff aware that Plaintiff was not making rate and is in danger of being fired from Amazon.

121.    Plaintiff refused to electronically sign the written write-up, which was computer generated by Amazon's manager Nguyen to authorize the manager with assistance of HR, to submit the write-up via his computer.

122.    Plaintiff then asked the HR staff Maddy September 2017, of Amazon, who was present during manager's presentation of why Plaintiff was receiving a written write-up that the HR employee (Maddy) was asked by Plaintiff to follow Plaintiff to the women's restroom.

123.    Once inside the women's restroom, Plaintiff pointed to the ceiling area within the restroom and asked Amazon's HR employee, Maddy; "What is that?".

HR-Maddy stated: "That is not a camera".

Plaintiff then stated; "What is it- then?"

124.    HR Maddy stated, "That is not a camera" and that Maddy would send someone to Plaintiff's workstation to inform Plaintiff of what exactly the electronic device was.

125.    No one appeared at Plaintiff's workstation to offer explanation or cause for a camera being installed in the women's restroom, prior to Plaintiff being forced to leave employment with Amazon on September 11, 2017, right before lunch time.

126.    Amazon now, accelerated their illegal activities in attempting to make it appear that Plaintiff has not made rate the week of September 4, 2017 by their ADAPT program electronic and computer-generated calculation manipulation.

127.    Plaintiff had started her school accommodation schedule with Amazon for the start of classes on September 5, 2017.

128.    Plaintiff left work at 3 pm on Tuesdays to attend class at 6 pm because Plaintiff rode the bus from Amazon in Whitestown to Downtown Indianapolis.

129.    Plaintiff was then required to make up missed hours on the following Thursdays.

130.    Amazon's manager then approached Plaintiff again and stated Plaintiff was not making rate, I believe it was September 6, 2017. (See Exhibit Section B).

131.    Plaintiff endured numerous questions, statements and accusations from other packing associates and managers of Amazon, questioning Plaintiff's beliefs, why Plaintiff did not appear to like certain music and why Plaintiff did not belong to any of Amazon's numerous "clicks".

132.    A "click" is Amazon's intention to have all its associates affiliate with Amazon's unethical and immoral practices of forcing associates to become one of their "toy robots" or be

subjected to their discriminatory practices, which leads to illegal acts and firing for non-compliance.

133.   Amazon decided that Plaintiff was not a faithful follower who willfully cooperated and thus, all Defendants proceeded to funnel Plaintiff through their malice discriminatory practices to get rid of Plaintiff by any means necessary, no matter how illegal.

134.   Amazon attempted to strip Plaintiff of her moral compass and her strong Spiritual Will and to attempt to force Plaintiff into submission of Amazon's illegal and unethical behavior or be fired for not being one of the good old "robots".

135.   Amazon utilized their computer-generated Connection Survey Questionnaire, which was implemented through all computers, within Amazon in Whitestown, Indiana, for all associates to answer questions presented to them before each associate can begin their daily duties of packing and shipping by use of the assigned computer.

136.   This illegal and forced computer-generated Connection Survey Questionnaire survey was implemented in 2016. An associate could not begin their shift until they first completed the forced Survey, which had no 'opt out' choice available.

137.   Questions during the computer-generated Connection Survey Questionnaire 95% of the time had nothing to do with the duties of the associate or employment with Amazon.

138.   Most of the questions asked by Amazon to Plaintiff, via the computer Connector Survey Questionnaire, consisted of personal and private informational questions that Amazon forced an answer from all associates before they could start their shift of work.

139.    Amazon did not provide an entry by key, for associates, like Plaintiff, who wanted to "opt out" of answering the questions but all associates had to enter one of the chosen available responses to each question.

140.    Numerous of the questions asked by Amazon to Plaintiff had nothing to do with duties Plaintiff was required as am employee, to complete at Amazon.

141.    Plaintiff inquired to other associates to see if they were asked the same questions and there were times questions were especially created for Plaintiff as a Christian, over 40 years old and being an African American.

142.    Numerous Amazon Connector Survey questions related to Plaintiff's civil action against the City of Indianapolis, which was pending in same federal court, and presided on by same district court judge as the above action.

143.    Amazon asked questions to intimidate Plaintiff by forcing Plaintiff to answer even when Plaintiff did not want to answer questions.

144.    Plaintiff went to HR Manager in late 2016, to complain about the Forced Survey and HR informed Plaintiff that everyone must answer the questions, even her.

145.    Amazon Survey Questions, asked Plaintiff several times within time span of about February 2017 to May 2017: "Do you not complain about issues relating to Plaintiff's job because Plaintiff feared what will happen to Plaintiff Parker?"

146.    Amazon also asked Plaintiff via their Illegal Computer Survey on Plaintiff's assigned computer at assigned workstation. "Do Plaintiff intend to learn about all subjects of law or just what Plaintiff is presently litigating?"

147.   Amazon asked Plaintiff via their Illegal Computer Survey on Plaintiff's assigned computer: "Do you feel you belong here at Amazon as a minority Christian?"

148.   Amazon asked Plaintiff via their Illegal Computer Survey on Plaintiff's assigned computer: "What Superpowers does Plaintiff have"?

149.   Amazon and others recruited by Amazon, were the cause of Plaintiffs water being tampered with, within Plaintiff's apartment in Indianapolis, Indiana, by funneling pesticide poisonings from the upstairs unit, into Plaintiff's restroom water flow downstairs.

150.   Plaintiff allege that another questionnaire was asked on the Illegal Computer Survey via telephone which did not come from Seattle, Washington but from Amazon in Whitestown, Indiana, at the direction of other upper management and officers.

151.   Plaintiff cannot remember one of the manager's name. This same Ops Manager was present walking back and forth in the hallway of the office where Plaintiff was sitting and answering the Computer Survey Questionnaire by Amazon via telephone.

152.   It was in August 2017 that Amazon's manager then proceeded to order that Plaintiff Parker be cross-trained in AFE Department, which is Multi-packing in another department.

153.   Amazon's manager stated that "all" associates must be cross-trained in AFE in August 2017. Plaintiff was always flagged to go to AFE, while other ethnic groups outside of Plaintiff's protected glass were not flagged for same cross training.

154.   Plaintiff realized later that this was a process of elimination of African American females over the age of 40, orchestrated by Amazon for firing.

155.    Plaintiff did not ask to be cross-trained, nor did Plaintiff Parker display an interest to Amazon's manager to be cross-trained in AFE.

156.    Amazon, had purchased two (2) industrial electronic packing machines, which eventually took the place of human packers. This was Amazon's plot to get rid of African American women, over the age of 40, to give a false impression that this deliberately selected class of associates were not making rate.

157.    Amazon utilized electronic manipulation of data, as the cause of firing the protected class for failure to maintain employment requirements of daily and weekly rates. This would exempt the targeted protected class of employees from receiving unemployment benefits, if they were fired for cause.

158.    Plaintiff was pulled from her department of Large Packing, usually in the midday, and sent to AFE for packing, and then threatened with write up for short time packing and claims that Plaintiff is not making rate.

159.    Representatives of Amazon, constantly sent Plaintiff to AFE and not to Small Packing to interrupt Plaintiff's work flow to cause Plaintiff to not make rate for the day and week.

160.    Amazon's manager then stated that Amazon was now combining rates in AFE and Large Packing departments.

161.    There is no way Amazon could combine AFE rate with Large Packing rate because the rate requirement for each department is drastically different in calculation and electronic tabulation and cannot legally be combined into one rate.

162.    Amazon's manager Nguyen was unable and unwilling to break down the procedures he followed in the application utilized by Amazon, to track rates by usage of (ADAPT) to show how Plaintiff did not make rate at any given time.

163.    Plaintiff's name would never be added to the posted Rate Sheet for AFE for Plaintiff to view her daily or weekly rate but only representatives of Amazon would inform Plaintiff verbally of rate.

164.    Plaintiff asked the manager, Mr. Nguyen, If Plaintiff is doing so poorly in packing in AFE, why is Plaintiff consistently sent to pack in AFE.

165.    The manager of Amazon had no reply to Plaintiff's question but stated daily employment duty tasks direction to and for Plaintiff derived from instructions to him by officer of Amazon.

166.    Amazon began utilizing ADAPT in about February 2017.

167.    Amazon then would print out a daily rate document, post it for all packers to view their progress for the given date and breaks throughout the day.

168.    When Plaintiff exceeded all associates packing and packed swiftly and accurately for a given day, Amazon through the manager, would claim error in computer printing as the reason that the rate for that particular date was not posted on the board for each associates to view their progress for a particular day.

169.    Amazon did not provide training to associates on the new ADAPT utilization in determining daily and weekly rates of each associate in 2017.

170.    Amazon did not provide the mandated training and around the curve learning of the ADAPT Program prior to its implementation in Large Packing in 2017

171.    ADAPT was not utilized across the board in all departments at Amazon's Fulfillment Center in Whitestown, Indiana.

172.    Amazon provided no written documents to any of the associates, informing us that ADAPT will be utilized instead of Amazon's former method of tracking units, rate and time off tasks calculations via recognizable computer application.

173.    Amazon through directive of the manager, then continued to implement new directions on tracking rates in 2017, the max units needed to make rate all was constantly changed from one extreme to the next, from day to day, in attempts to entrap Plaintiff in her efforts to continue to make rate. (See some labor tracking reports given to Plaintiff by the manager and the latest document posted on the board and given to Plaintiff on the latest rate and unit requirements (see Section B).

174.    An associate employee of Amazon recruited to harass Plaintiff made sexually explicit statements to Plaintiff, on the second level exit stairs coming from Large Packing Department, down the stairs, to Small Packing Department.

175.    This male associate stated that he has seen all of Plaintiff, in all her glory and he started laughing. He then stated "you are not "no" Christian in what I saw." This happened late 2016 to early 2017.

176.    Plaintiff questioned this male associate who then realized what he had stated, and he failed in his attempts to clean up what he stated.

177.    The subject male associate was then transferred to night shift or another location. Plaintiff did not see the subject male employee any more after this incident on the stairs.

178.    Amazon also had audio recorders by the lockers to violate the small privacy employees believed to be private, to talk on cell phones, communicate with each other and enjoy lunch and breaks.

179.    The audio was placed in the ceiling fixtures which appeared in 2016 to early 2017, as smoke detectors but these devices had a voice activated sensors, which only recorded when words spoken, in the vicinity of the lockers and breakroom area.

180.    Plaintiff then made comments about the lockers having ears and then Amazon swiftly removed the recording devices from the ceiling fixtures in early 2017, around the same time the plot to fire Plaintiff was implemented by Jeff Bezo and Amazon, LLC and numerous co-conspirators.

181.    Plaintiff was able to sit, speak and watch the device stop, start and continuous recording when conversations heard via the recording device.

182.    Amazon has willfully violated the privacy of Plaintiff by listening in on conversations Plaintiff had on her phone and deliberately interrupting phone calls that Plaintiff attempted to make while on lunch or break. The telephonic harassment is continuing to the date of refiling this action.

183.    Amazon by instructions to officers and managers, broke into Plaintiff's locker several times to continue the harassment and fear tactics and to view private documents inside Plaintiff's locker. The illegal entry into Plaintiff's locker occurred between February 2016 through November 2016 and during times that Plaintiff had to make filings in court for other action that was pending in court(s) and subsequently ruled against Plaintiff and failed to provide due process

of law to Plaintiff before allowing illegal repossession of Plaintiff's SUV. All done in the sifting process of Jesus on Plaintiff.

184.    Plaintiff's action against the City of Indianapolis Police Department and numerous officers and creditors were presided over by the same district court judge who illegally dismissed the above action in the same federal court.

185.    Amazon. also broke into Plaintiff's locker to retrieve Plaintiff's cell phone to gain access to Plaintiff's cell phone for corrupt purposes of deleting contacts and copying information and then utilizing the stolen information against Plaintiff.

186.    Plaintiff was then forced to bring a lock box with lock, to house inside Plaintiff's locker, to keep Amazon and its assigned "click" members from illegally obtaining and poising foods from within Plaintiff Parker's locker, which were private to Plaintiff.

187.    At no time, did Amazon request for permission from Plaintiff to enter Plaintiff's locker at any time.

188.    Amazon's HR personnel, who assisted Plaintiff in exiting employment with Amazon, submitted Amazon's Offer", downloaded the "Offer" document, printed it out, Plaintiff signed it and then the same HR personnel, emailed Plaintiff again because the computer signed "Offer" mysteriously disappeared and the same HR staff requested to Plaintiff via email that Plaintiff submit the scanned "Offer" to him so that he could get it processed for Plaintiff in September 2017.

189.    The Amazon was a monetary gift to associates who desired to pursue careers outside of Amazon and in any other state besides Indiana.

190.    Plaintiff gladly sent the HR personnel a scanned copy of the "Offer" and the HR personnel was able to process the gift.

191.    The email sent by the HR employee then disappeared and HR could not explain what happened to the email.

192.    Plaintiff retained a copy of the email on USB drive, after the HR employee sent the email, which never generated a response by Amazon upper management.

193.    Amazon instituted criminal and civil tactics against Plaintiff to bully and harass Plaintiff and to intimidate, aggravate and cause financial and economic harm to Plaintiff and others in like situations, who dare to complain about Amazon's illegal activities against African Americans over the age of 50.

194.    Amazon has an illegal practice to get rid of older associates to make room for younger associates of Amazon preferred ethnic group, to be hired to replace the ones illegally fired or forced to quit, who were mostly African Americans over 50 and mostly females.

195.    Amazon appears to utilize an Asian employment agency, which caters to Asian individuals to hire more Asians in packing Large and Small, packing in AFE, stowing and picking departments as Amazon believes the Asians are more likely to not complain about working conditions and illegal treatment by Amazon.

196.    The owner of the Asian Employment Agency appeared at Amazon in Whitestown, Indiana and approached Plaintiff Parker and stated, "Don't worry, you will be okay, when I am done". This happened at the same time that the audio surveillance equipment was being removed from the ceilings in the locker areas.

197.    Amazon has engaged in secret immigration of Asians from foreign countries into the United States, under the radar of Federal Immigration Agencies by using this Asian Employment Placement Agency who appeared around 2017.

198.    Many Asians hired by Amazon cannot speak, understand or communicate in English and yet numerous associates are fired or leave under the pressure to be replaced by another ethnic group that Amazon prefers to use with (AI).

199.    Plaintiff witnessed other older associates, within same race as Plaintiff, being set up to be fired with the rate manipulation scheme to make it appear as if the older associates were not making rate in 2015 and 2016 at Amazon in Whitestown, Indiana.

200.    When Plaintiff was fired from Amazon in 2017, Plaintiff could not obtain employment in Indianapolis, Indiana or gainful employment in Valparaiso, Indiana, nor obtain employment in DC or any other state or city Plaintiff has applied because All Defendants and numerous others orchestrated plots to blacklist Plaintiff. I thank God every day that He is Plaintiff Parker's provider of needs and essentials.

**CAUSE OF ACTION**:
**COUNT 1.  RACIAL DISCRIMINATION-**

201.    Plaintiff restates 1-200 as though restated and fully stated herein with allegations.

202.    At all relevant times, Plaintiff was an employee and Defendant Amazon was her employer under the definition of Title VII, 42 U.S.C. Section 2000e(1)(b).

203.    At all relevant times, Amazon and its management team, engaged in interstate commerce and employed well over 15 employees and is thus subject to the requirement of Title VII.

204.    Plaintiff is an African American, a female and over the age of 40.

205.    Plaintiff was subjected to adverse employment actions, including and not limited to hostile work environment and illegal termination by all Defendants and others.

206.    All Defendants engaged in conduct that caused Plaintiff Parker to join the ranks of the unemployed because Plaintiff Parker would not join Amazon's illegal enterprise or clicks, formed as aa "illegal enterprise" to accomplish circles of deceit in business operations.

207.    Amazon and affiliates, stalked Plaintiff, continuously and targeted Plaintiff for discriminatory practices, which escalated into firing Plaintiff. Plaintiff was targeted and harassed often because Plaintiff, is an African American, over the age of 40, and because Plaintiff fights for her Constitutional Rights, without any respect for person(s) or entities, conspiring against Plaintiff to deny justice.to Plaintiff.

208.    Plaintiff was forced to endure a hostile work environment and was forced to leave because the environment was a detriment to the health and safety of Plaintiff.

209.    As a direct and approximate result of Amazon and officers, managers and employees, wrongful acts, Plaintiff has sustained injuries and damages and is not limited to loss of earnings since 2017, loss of fringe benefits, life and health insurance, mental anguish, physical and emotional distress, humiliation and embarrassment.

210.    Defendant Amazon's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, entitling her to punitive damages.

**COUNT II:**

**RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964-42 U.S.C. SECTION 2000e-2(a)(1)**

211.     Plaintiff restates 1-210 as though restated and fully stated herein with allegations.

212.     At all relevant times, Plaintiff was an employee of Amazon and Defendant Amazon was her employer under the definition of Title VII, 42 U.S.C. Section 2000e(1)(b).

213.     At all relevant times, Defendant Amazon and its management team, engaged in interstate commerce and employed well over 15 employees and is thus subject to the requirement of Title VII.

214.     Plaintiff is a Christian, at an age over 40 and is an African American Female, who was unlawfully discriminated against by all Defendants because Plaintiff completed her work and went home each day, while not engaging in behavior unbecoming of a Christian while at Amazon fulfillment center in Whitestown, Indiana.

215.     Amazon employees followed Plaintiff numerous times, to the women's restroom and the employee(s) would ask Plaintiff questions about Plaintiff's "Faith" and faithfulness to God and make disrespectful comments with laughter to Plaintiff.

216.     When Plaintiff, while praying at Plaintiff's locker, Plaintiff would be watched and verbal questions thrown at Plaintiff by other employees at the direction of all Defendants, who would then laugh at Plaintiff, almost on a daily basis in 2016 and 2017.

217.     Amazon conspired against Plaintiff, to subject Plaintiff to adverse employment actions, by numerous other employees and managers at the direction of officers of Amazon, while they attempted to get Plaintiff to respond to illegal activities in a negative manner to cause Plaintiff to be fired for verbal confrontation, threats, and insubordination to managers and/or officers.

218.    At no time dud HR or other personnel staff who Plaintiff complained to, made any attempts to assist Plaintiff Parker or investigate the treatment Plaintiff Parker endured for several years at Amazon in Whitestown, Indiana, from 2016 through 2017.

219.    Plaintiff was forced to endure a hostile work environment at Amazon and was forced to leave because the environment was a detriment to the health and safety of Plaintiff.

220.    As a direct and approximate result of Amazon allowed wrongful acts, Plaintiff has sustained injuries and damages and is not limited to loss of earnings, loss of fringe benefits, health and life insurance, mental anguish, physical and emotional distress, humiliation and embarrassment.

221.    Amazon and all other Defendants' conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, from 2015 through September 2017, which entitles Plaintiff to punitive damages.

**COUNT III:**
**RETALLIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964-42 U.S.C. SECTION 2000e-3(a)**

222.    Plaintiff restates 1-221 as though restated and fully stated herein with allegations.

223.    At all relevant times, Plaintiff was an employee and Defendant Amazon was her employer under the definition of Title VII, 42 U.S.C. Section 2000e-3(a).

224.    At all relevant times, Defendant Amazon, engaged in interstate commerce and employed well over 15 employees and is thus subject to the requirement of Title VII.

225.    Plaintiff opposed the discrimination and harassment perpetrated against her based upon her age, religion and race by having a meeting with HR Management and contacting EEOC to

file a charge against Amazon. Amazon's HR personnel willfully participated in the unlawful acts directed by Amazon by failing to intervene on Plaintiff's behalf in 2017.

226.    Defendant Amazon. failed to enforce any lawful employment policy or regulation to assist Plaintiff in here request for intervention by HR. from around 2016 through 2017

227.    Once Plaintiff filed charges with EEOC, numerous officers, managers and employees accelerated employment discrimination by retaliating against Plaintiff by causing an atmosphere of pure hate and evil, to cause Plaintiff to join the ranks of the unemployed in 2017

228.    Amazon then accelerated its discriminatory practices the week of September 11, 2017 which caused Plaintiff to leave employment for her own sanity, spiritual survival and safety.

229.    As a direct and approximate result of Amazon's wrongful acts, Plaintiff has sustained injuries and damages and is not limited to loss of earnings, loss of fringe benefits, life and health insurance, mental anguish, physical and emotional distress, humiliation and embarrassment, which has led to continuous economic and financial harm.

230.    Defendant Amazon's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, from 2015 through September 2017, which titles Plaintiff to punitive damages.

**COUNT IV:**
**AGE DISCRIMINATION**

231.    Plaintiff restates 1-230 as though restated and fully stated herein with allegations.

232.    Amazon appear to be angry with Plaintiff because Plaintiff was faster and more accurate with packing and shipping than the younger generation of numerous ethnic backgrounds, not within Plaintiff's protected class.

233.   All Defendants appear to become vengeful towards Plaintiff because no matter what plot employees of Amazon perpetrated, to attempt to slow down Plaintiff's speed of accuracy in packing and shipping, God made sure Plaintiff prevailed in making rate each day employed and working at Amazon.

234.   Amazon appear to be offended by the fact that Plaintiff did not fear any of them and Plaintiff is willing to fight for justice, against any willful participant in the civil conspiracy against Plaintiff, while Plaintiff is faithful to God's Grace and protection.

235.   Amazon's written write-ups were done to force the firing of several African American females over the Age of 40, so that each female, would not be able to file for and receive unemployment benefits, when the firing is based on failure of employee to maintain employment requirements of maintaining daily and weekly rates for packing and shipping.

236.   As a direct and approximate result of Amazon wrongful acts, Plaintiff has sustained injuries and damages and is not limited to loss of earnings, loss of fringe benefits, life and health insurance, mental anguish, physical and emotional distress, humiliation and embarrassment.

237.   Amazon conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, as well as Defendants' made several "attempts" to cause harm to Plaintiff to result in the death or mental/physical disabilities of Plaintiff on numerous occasions.

238.   Plaintiff is entitled to punitive damages for Amazon turning to civil and criminal evil plots to stop Plaintiff Parker by any means Defendant believe to be necessary. God reinforces to Plaintiff Parker that; "No weapons formed against Plaintiff, shall prosper, no matter how carnal in nature the attacks."

**COUNT V:**

**HOSTILE AND ABUSIVE WORKING ENVIRONMENT**

239.    Plaintiff restates 1-238 as though restated and fully stated herein with allegations.

240.    Amazon participated in a corrupt activity to monitor Plaintiff's whereabouts by following Plaintiff while at Amazon in Whitestown, Indiana, as well as illegal surveillance of Plaintiff, when Plaintiff was not on the clock at Amazon, by the use of Jeff Bezo's Facial Rekognition system.

241.    Plaintiff was forced to endure a hostile work environment and was forced to leave because the environment was a detriment to the health and safety of Plaintiff.

242.    Amazon continued the same illegal discrimination against Plaintiff up to and including 2021, even when Plaintiff Parker no longer worked for Amazon.

243.    Plaintiff was subjected to constant harassment while at workstations, attempting to maintain daily rate. Numerous employees of Amazon would constantly interrupt Plaintiff, while Plaintiff was packing to attempt to persuade Plaintiff into conversations to receive a write-up for time off tasks.

244.    Amazon's employees would stop Plaintiff, mid packing, and direct Plaintiff Parker to another department, whereby the daily rate was based on a different electronic computer coding than the assigned department Plaintiff Parker was assigned when hired.

245.    Amazon did nothing to stop the illegal employment practices and harassment perpetrated against Plaintiff but most managers, officers and associates appear to join in on the harassment and intimidation plots against Plaintiff.

246.    As a direct and approximate result of Amazon wrongful acts, Plaintiff has sustained

injuries and damages and is not limited to loss of earnings, loss of fringe benefits, life and health

insurance, mental anguish, physical and emotional distress, humiliation and embarrassment.

247.    Amazon's conduct was with malice and recklessly indifferent to Plaintiff Parker's

federally protected rights, entitling her to punitive damages and exemplary damages.

**COUNT VI:**

**UNLAWFUL FILMING IN WOMEN'S RESTROOM:**

248.    Plaintiff Parker restates 1-247 as though restated and fully stated, herein with allegations.

249.    Amazon has engaged in unlawful filming of African American females at Amazon. -

Indy 1, by placing a spy camera inside the women's restroom located on the first floor, below

Large Packing area.

250.    Plaintiff Parker noticed the camera, when associates were moved from Lines 5 and 6

downstairs to lines 9 and 10 upstairs. The subject restroom is the closest restroom to the upstairs

department.

251.    Plaintiff Parker has no idea how long the camera has been positioned in the restroom but

Plaintiff Parker knows that since observing the camera, Plaintiff continuously experience anxiety

when entering any public restroom because of Amazon's violation of Plaintiff's reasonable

expectation of privacy in a restroom, while, entering, and utilizing the facility for women.

252.    Amazon appear to accelerate illegal and discriminatory practices against Plaintiff after

Plaintiff informed other associates and other HR office personnel about the audio devices put

into the smoke detectors in the ceiling of the breakrooms and over the lockers and the camera.

253.    Plaintiff was forced to endure a hostile work environment and was forced to leave because the environment was a detriment to the health and safety of Plaintiff.

254.    As a direct and approximate result of Amazon wrongful acts, Plaintiff has sustained injuries and damages and is not limited to loss of earnings, loss of fringe benefits, life and health insurance, mental anguish, physical and emotional distress, humiliation and embarrassment.

255.    Amazon and co-conspirators and employees caused Plaintiffr great emotional stress from experiencing all illegal employment activities at work and in Plaintiff's private life, to know that Amazon and its management behave is such a vile, demonic, offensive and illegal manner. Plaintiff resorts to prayer and meditation for the strength to forgive and keep it moving into the plan from Jesus for Plaintiff.

256.    Amazon has targeted Plaintiff Parker for their mass destruction in all areas of Plaintiff's life because Plaintiff filed her EEOC charge and then reported Amazon's accelerated retaliation treatment to attempt to force Plaintiff Parker to join the ranks of the unemployed. Plaintiff still, to this date believe God is in control as she walks through.

257.    Amazons' conduct was with malice and recklessly indifferent to Plaintiff Parker's federally protected rights, entitling her to punitive and exemplary damages.

258.    Plaintiff restates 1-257 as though restated and fully stated, herein with allegations and relief – **NOTE:** Plaintiff did search SOS in Indiana and Delaware on 11/23/2021 and no current submissions filed after revocation of agent in Indiana on Defendant Amazon

**REQUEST FOR RELIEF:**

   **WHEREFORE, Parker** prays for judgment as follows:
   - Lost front wages and back wages, vacation pay, annual economic wage increases and benefits retroactive back to 2017 and forward, for an amount to be proven at trial,

- Grant Parker all employment benefits had Parker not been discriminated against and retaliated against

- Grant Parker all expenses related to a Title VII action,

- Health insurance and medical insurance from 2017 and to be continuous,

- Compensatory damages for the humiliation endured, including

  Compensation for the emotional and physical toll of the abusive and harassing treatment Plaintiff endured daily while employed at Amazon, constantly to date, because of deliberate inability to become gainfully employed in any other state because of Amazons allowed illegal acts and actions to block employment in every state Plaintiff Parker directed,

- Exemplary damages;

- Punitive damages for Defendants malicious, reckless and orchestrated indifferent conduct against Plaintiff,

- Litigation expenses and fees under the Equal Access to Justice Act

- The court grants Plaintiff a jury trial,

- Prejudgment interest and post judgment interest

- Gift of Amazon Stocks from 2017 and continuing forward, with interest and penalties for failure to gift stocks timely and continuing for each year after being subject to discrimination and retaliation perpetrated against Parker,

- That this Court void the originally filed action in District Court of Indianapolis, Indiana and allow this action to begin as though originally filed action never happened in Indiana because action could have bebe filed legally in Delaware.

- Grant all other relief this Court deems just and proper.

Respectfully submitted this 26th day of November 2021

*Brenda Parker*
Brenda Parker, pro se
1400 Clifton St. NW, Apt. 422
Washington, DC  20095
219-883-9144
Email: brenda4now@protonmail.com

Under penalty of perjury, in the United States of America, Washington, District of

Columbia, the undersigned attest and certify that all facts, claims, statements and contents of

documents, being refiled in the above district court, are true and correct to the best knowledge

and belief of Brenda Parker and that Brenda Parker can testify to the truthfulness of the contents

of documents and exhibits attached, *pursuant to 28 U.S.C. Section 1746 BP*

*Brenda Parker—Executed on 11-29-2021*

Brenda Parker
1400 Clifton St. NW, Apt. 422
Washington, DC  20009
219-883-9144